IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | No. |
| J. NICHOLAS BRYANT | **5-22CR0099-H** |

## FACTUAL RESUME

In support of J. Nicholas Bryant's plea of guilty to the offense in Count One of the Information, Bryant, the defendant, David Sloan, the defendant's attorney, and the United States of America (the government) stipulate and agree to the following:

## ELEMENTS OF THE OFFENSE

To prove the offense alleged in Count One of the Information, charging a violation of 18 U.S.C. § 1343, that is, Wire Fraud, the government must prove each of the following elements beyond a reasonable doubt:[1]

*First*.  That the defendant knowingly devised or intended to devise any scheme to defraud, as described in the Information;

*Second*:  That the scheme to defraud employed false material representations, false material pretenses, or false material promises;

*Third*:  That the defendant transmitted or caused to be transmitted by way of wire, radio, and television communication, in interstate or foreign commerce, a writing, sign, signal, picture, or sound for the purpose of executing such scheme; and

*Fourth*:  That the defendant acted with a specific intent to defraud.

---

[1] Fifth Circuit Pattern Jury Instruction 2.57 (5th Cir. 2019).

**J. Nicholas Bryant**
**Factual Resume—Page 1**

## STIPULATED FACTS

1. J. Nicholas Bryant admits and agrees that on or about November 18, 2021, in the Lubbock Division of the Northern District of Texas and elsewhere, he, having devised or intending to devise a scheme or artifice and to obtain money or property by means of materially false or fraudulent pretenses, representations, or promises, did knowingly and with specific intent to defraud transmit or cause to be transmitted by wire communication in interstate or foreign commerce a writing, sign, signal, picture, or sound; that is, he sent a text message from Lubbock to a representative of Sales Hangar Flight Ops, LLC, in Jonesboro, Arkansas, indicating that a non-existent person, his "secretary," would pay an invoice totaling $38,000 for charter flights departing Lubbock to Houston, Texas, and continuing to Miami, Florida. Bryant further admits and agrees his actions were in violation of 18 U.S.C. § 1343.

2. On or about November 18, 2021, Bryant negotiated with Sales Hangar Flight Ops, LLC, a private charter flight company, for flights Bryant said he needed that day. Bryant represented that he was interested in buying an airplane of the type the company chartered, and wanted a "demo flight" to make a final determination. The flight itinerary included flights departing Lubbock, landing in Houston, with a final destination in Miami and a return flight from Miami to Houston with a final destination in Lubbock. The cost and invoice for the flights leaving Lubbock was $33,000. An extra $5,000 was added to cover alcoholic beverages inflight and limousine transportation with whatever remained to be retained as a "tip" per Bryant. The total was therefore $38,000. The invoice for the return flights mirrored the initiating flights invoice for a grand total of

$76,000. Negotiations, including those related to payment, transpired via text messages and telephone calls between Bryant in Lubbock and a company representative in Jonesboro, Arkansas; thus, the communications traveled in interstate commerce.

3. After the two agreed to flight times and limousine transportation, the company representative asked for a credit card to start the payment process for the flight originating in Lubbock. Ultimately, the two agreed that payment would be sent and received through Quickbooks Payments, an online payment platform.

4. Thereafter, Bryant sent a text message that stated, "Send me that email so I can have my secretary pay ya buddy." Minutes later, Bryant sent a text message that stated, "She's paying it now." The sales representative asked Bryant to formally confirm payment so he could start organizing the flights. Bryant responded with a text message that stated, "Paid." This was a false material representation, and Bryant made the false representation with specific intent to defraud the charter flight company. Bryant well knew he did not have a secretary who paid for the flights, nor did he have money to pay for the flights.

5. Bryant, however, knew how to manipulate the QuickBooks Payments platform to trick the charter company into believing he paid the invoice. He asked the charter company to send an invoice to him for the outgoing flights via QuickBooks Payments. He then initiated payment through the platform, which resulted in an automated message to both parties confirming payment and indicating that transfer of funds would occur thereafter. The company representative received and relied upon the message, stamped the first invoice as paid, and scheduled the flights and transportation

Bryant requested. The same transaction sequence occurred the following day for the $38,000 invoice for the return flights. The charter company received the payment notification and scheduled the return flights. All along, Bryant knew the system would send payment confirmation and that, because the payment process took several days, the charter company would not receive notification of cancelled payment for either invoice until he was on the return flights or after the flights concluded. In short, Bryant knew he did not have money in his bank account to cover even the transportation or gratuity he promised, much less the flights.

6. Three days later, on November 22, 2021, while Bryant was in Miami, the charter flight company received notification from QuickBooks Payments that Bryant's payment for the first invoice failed. Bryant promised to pay both invoices with bank wire transfers. He sent multiple text messages that day from Miami and then from Houston assuring the company with each text that the invoices would be paid. The charter flight company ultimately grounded the airplane in Dallas on November 23, 2021. Bryant continued sending text messages assuring the company he would make payment. That same day he ceased communications and refused to answer text messages and phone calls from the company. Bryant never paid the $76,000 he owed to the company.

7. Bryant admits and agrees he defrauded at least 50 unsuspecting victims through similar means. He further admits and agrees he used sophisticated means in furtherance of the offense in Count One and in furtherance of other fraud schemes. He used online payment platforms, including Veem and QuickBooks Payments, to convince his victims that payment was forthcoming. He manipulated the processes to make it

appear as though he made payments while knowing all along that his payments would never fund and that the victims would never receive payment.

8. To lend an air of legitimacy to his fraudulent schemes, Bryant represented to his victims that he was employed by a number of companies, many of which were fictitious and non-existent; others were legitimate but never employed Bryant. In regard to Count One, he convinced the victim he was affiliated with 7Partners, LLC, a non-existent company and, further, that his parents were wealthy oil and gas investors. He also assumed identities of fictitious persons and communicated with the victims under the guise of the fictitious persons via telephone numbers and/or email addresses he set up under those names. In addition, he obtained at least one domain through GoDaddy to legitimize a fictitious company. In that instance, he convinced the owner of a company in the oil and gas industry—a man who previously worked with Bryant and trusted him—to front approximately $150,000 to reopen a fictitious oil well.

9. Bryant admits and agrees that by and through his fraudulent schemes he acquired and attempted to acquire expensive vehicles, including a number of vehicles with a combined estimated value of $543,215.12. He successfully acquired five of the vehicles before the victims discovered his fraudulent scheme. He convinced a builder to build a home with a pool and workshop. The builder had invested a substantial amount of work and labor into the project before Bryant's purported attempts at payment of $980,000 failed. In addition, Bryant defrauded and attempted to defraud at least 17 charter flight entities by using fraudulent means to convince the entities to fly him and his friends to various destinations in the United States. Nine of the entities fell victim to

J. Nicholas Bryant
Factual Resume—Page 5

Bryant's fraud. In nearly every instance, Bryant demanded limousine transportation at the destinations and required that the planes were stocked with vodka. After the victim in Count One flew Bryant and his friends to Miami, he obtained a half day of sailing in the Port of Miami on a 90-foot yacht for he and his friends. He demanded steak dinners, Champagne, and vodka during the sail. As with the other schemes, the victim never received payment. While in Miami, he also defrauded a driver by convincing him to pay for expensive hotel rooms. That victim was likewise left without payment.

10. Bryant admits and agrees that the offense alleged in Count One and all relevant conduct related to his fraud schemes resulted in actual and intended loss in excess of $1.5 million.

11. Bryant admits and agrees that he committed all the essential elements of the offense in Count One. This factual resume is not intended to be a complete accounting of all the facts and events related to the offense charged in this case. The limited purpose of this statement of facts is to demonstrate that a factual basis exists to support Bryant's guilty plea to Count One.

AGREED TO AND STIPULATED on this 31st day of October, 2022.

CHAD E. MEACHAM
UNITED STATES ATTORNEY

J. NICHOLAS BRYANT
Defendant

ANN HOWEY
Assistant United States Attorney
Texas State Bar No. 24032312
1205 Texas Avenue, Suite 700
Lubbock, Texas 79401
Telephone: 806-472-7351
Facsimile: 806-472-7394
E-mail: ann.howey@usdoj.gov

DAVID SLOAN
Attorney for Defendant